UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSE NORBERTO VALDEZ** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-1124** |
| **LABORDE MARINE LIFTS, INC.** | **SECTION "K" (3)** |

REPORT AND RECOMMENDATION

This case is referred to the undersigned United States Magistrate Judge for the determination of the amount of reimbursement due plaintiff and plaintiff's counsel for medical expenses (cure)[1] and submission of a report with recommended findings of fact and conclusions of law.  Considering the Defendant's Motion for Judgment on Medical Expense Reimbursement and Plaintiff's Response, the record and the applicable law, IT IS RECOMMENDED that, with respect to reimbursement for cure due plaintiff and plaintiff's counsel, judgment be GRANTED in the amount of **$19,604.46**  for the following reasons.

## I. Nature of the Case and Course of Proceedings

On April 20, 2004, Jose Norberto Valdez filed suit against defendants, Laborde Marine Lifts, Inc. and BP America Production Company, alleging he injured his back and torso on March 11, 2004 while stepping out of a hatch door on the M/V LAB LIFT II.  Plaintiff complained that the mat upon which he stepped slid and the accident was the result of both negligence and unseaworthiness of the vessel.[2]   On August 7th, 2007,  BP's Motion for Summary

---

[1] *See* Order of Reference dated August 31, 2007 [Doc. # 123]; Defendant's Motion for Judgment on Medical Expense Reimbursement Due to Plaintiff and Plaintiff's Counsel [Doc. #133]; Plaintiff's Memorandum in Response [Doc. #132].

[2] *See* Plaintiff's Complaint Under the Jones Act filed April 20, 2004 [Doc. #1]; Plaintiff's First Supplemental and Amended Complaint adding BP America Production Co. filed November

1

Judgment was granted and a Rule 54(b) Judgment issued.[3]  On August 29, 2007, plaintiff settled his claims against his Jones Act employer, Laborde Marine Lifts, Inc., for the payment of $850,000.00 plus any unpaid or unreimbursed[4] cure in an amount not to exceed $350,000.00.

Pursuant to the reference of the district judge, the undersigned convened a status conference and issued a briefing scheduled.  The parties filed their respective submissions and the matter was deemed submitted on January 23, 2008.[5]

## II. Defendant's Motion for Judgment on Medical Expense Reimbursement

Defendant timely filed the aforesaid motion, providing a listing of the disputed maintenance and cure charges and a memorandum explaining why certain charges claimed as reimbursement were disputed.  Plaintiff filed a response seeking an award in the total amount of $27,581.64 as reimbursement of medical expenses paid by the plaintiff and plaintiff's counsel. That sum consists of payments made by plaintiff himself allegedly in the total amount $10,652.89, payments made by counsel Jeffrey Stern in the stipulated amount of $10,264.00 plus payments made by counsel Jacobs & Sarrat to various medical providers in the total amount of $6,664.75.[6]  Aside from listing six (6) separate payments by Jacobs & Sarrat totaling $6,664.75 and five (5) categories of payments made by the plaintiff totaling $7,112.89, Valdez provides no

---

10, 2004 [Doc. #12].

[3]*See* Order and Reasons dated August 27, 2007 (dismissing all of the plaintiff's claims against BP America) [Doc. #119]; Order Granting Motion for Rule 54(b) Judgment [Doc. #122].

[4]The instant motion solely addresses reimbursement of payments made by the plaintiff and plaintiff's counsel for plaintiff's medical treatment/cure.  The issue of payment of plaintiff's outstanding unpaid medical expenses is currently the subject of an outside audit.

[5]*See* Minute Entry dated November 29, 2007 [Doc. #131].

[6]*See* Plaintiff's Memorandum in Response [Doc. # 132].

explanation for the foregoing summation and defers without any explanation to "all ... [of] the documentation submitted by the defendant and attached to its motion."[7]

As aforestated, defendant Laborde Marine Lifts, Inc. has disputed only certain items claimed as reimbursement by plaintiff's counsel (Jacobs and Sarrat) and the amounts claimed as reimbursement paid by the plaintiff (Jose Norberto Valdez). The disputed sums are discussed below serially

### III. Jacobs and Sarrat's Payments

Defendant correctly notes that, on September 24, 2007,[8] plaintiff's counsel submitted evidence of payments by Jacobs and Sarrat, as follows:

(1) $1,500.00         Dr. William Francis    #26365  dated 2-27-07

(2) $  950.00         Dr. Mark McDonnell  #26188  dated 1-29-07

(3) $  750.00         Dr. Paul Vaughan       #26303  dated 2-16-07

(4) $2,050.00         Dr. Mark McDonnell  #26546  dated 3-21-07

(5) $  214.75         Northshore Orthopedics Assoc. #25104  dated 8-30-06

Other than the five listed above, plaintiff provided the Court with no other cancelled checks issued by Jacobs and Sarrat. Nevertheless, plaintiff has listed in his response memorandum at Item 6 a Jacobs & Sarrat check made payable to Dr. Ximines in the amount of $1,200.00.[9] In the absence of proof of payment (and there is none with respect to Dr. Ximines),

---

[7]*See id.* at p. 2 of 2.

[8]*See* Correspondence of Al Sarrat dated September 24, 2007 (stating "[p]lease find enclosed copies of *all of our cancelled checks* for related payments to Captain Valdez' health care providers") (italicized emphasis added) [Exhibit "D" to Defendant's Motion for Judgment].

[9]*See* Plaintiff's Memorandum in Response at p. 2 of 2 (listing at item # 6 Jacobs' payment to Dr. Ximenes totaling $1,200.00).

plaintiff has failed to meet his burden of proof with respect payment of the sum of $1,200.00 to Dr. Ximines.

Addressing payments made to Drs. McDonnell and Vaughn (items 2 through 4 above), said payments directly correlate with charges for litigation expenses – *i.e*., not medical expenses/cure.[10] Plaintiff did not favor the Court with a reply to the defendant's argument or discuss the evidence highlighted by defendants, which preponderates in favor of finding that the aforesaid payments in the amounts of $950.00, $2050.00 and $750.00 constitute payment for litigation support, not cure. These sums are not subject to reimbursement under the terms of the parties' settlement agreement.

In summary, in addition to the stipulated amount of $10, 264.00 to be reimbursed to Jeffrey Stern, plaintiff's counsel (Jacob and Sarrat) are entitled to reimbursement in the full amount of $1,714.75 (*i.e*., $1500.00 paid to Dr. William Francis plus $214.75 paid to Northshore Orthopedics Associates).

### IV. Jose Norberto Valdez's Payments

Plaintiff submits the following itemization with respect to his own payment of medical expenses, to wit:

"**VALDEZ's PAYMENTS**

HEB Pharmacy                             $3,898.89

---

[10]*See* Dr. Paul Vaughn's Invoice No. 047190 dated 10-17-2006 in the amount of $750.00 (noting a procedure code of 99080-AT, the procedure being an "additional 30 minutes for depo" and the date of service 10-16-06) [Exhibit "E" to Defendant's Motion for Judgment]; Louisiana Spine Surgery/Dr. Mark McDonnell's Statement of Account No. 50482 (noting charges in the amounts of $950.00 and $2050.00 for services not covered under plaintiff's health plan, including case manager 30 minutes reference code 02389 with the date of service 1-31-07 and reports and narratives reference code 02421 with the date of service 2-13-07 and attorney's payment of same) [Exhibit "E" to Defendant's Motion for Judgment].

| | |
|---|---|
| Health First/Legend Oaks Chiropractic | $435.00 |
| Joyce Martin - counseling | $460.00 |
| Westlank Clinic | $95.00 |
| Pain & Stress Mgmt. Ctr. | $2,224.00 "[11] |
| **TOTAL** | **$7,112.89** (not $10,652.89 per plaintiff's computation) |

This Court's review of the particular facts evidenced by the invoices, statements, summaries of charges, receipts and other financial documents to which the plaintiff deferred reveals that the defendant has provided the more thorough and accurate analysis of the proof of payment provided by Valdez. Defendant's summary is recapitulated below.

**JOSE VALDEZ**

| | |
|---|---|
| Co-Pays | $1,109.80 (notwithstanding the lack of proof of payment) |
| Prescription Receipts | 1,045.66[12] |
| Westlake Clinic | 95.00[13] |
| Pain&Stress Mgmt. Ctr. | 1,669.00[14] (not $1,669.00 plus $1,240.00 as claimed by plaintiff) |
| H.E.B. | 3,256.25[15] ($4141.41 less $885.16) |

---

[11]Plaintiff's Response Memorandum at p. 1 (Listing Payments made by Valdez) [Doc. #132].

[12]*See* Plaintiff's Counsel's September 21, 2007 Correspondence to Defendant (enclosing prescription receipts in the total amount of $1045.66) [Defendant's Exhibit "B"].

[13]*See* Plaintiff's Counsel's October 23, 2007 Correspondence to Defendant (enclosing a medical bill from Westlake Clinic noting a $95.00 credit card payment) [Defendant's Exhibit "F"].

[14]This figure represents the amounts paid by plaintiff as reflected in the comprehensive Pain and Stress Management Center Bill forwarded to defense counsel *via* letter dated October 23, 2007 (Defendant's Exhibit "F") and includes $1,240.00 in bills from the Center forwarded to defense counsel *via* cover letter dated September 21, 2007 (Defendant's Exhibit "C").

[15]Defendant correctly notes that seven specified prescription expenses, including $35.00 $50.00, $317.58, $317.58, $65.00, $65.00 and $35.00 (totaling $885.16) were already accounted for therefore must be backed out of the HEB total. These prescription expenses were accounted

Joyce Cargill              450.00[16]

**TOTAL**          **$7,625.71**[17]

As to the letter from Health First Chiropractic that $ 435.00 in charges for treatment spanning the period of June 7, 2007 through October 23, 2007 were paid, the submission is deficient in that there is no detailed accounting.[18] The provider's letter suggests that some of the treatment was provided after the case was settled (*i.e.*, after August 29, 2007). No detailed accounting was provided despite the defendant's request for same.[19] Because the plaintiff has not demonstrated by a preponderance of the evidence that the charges were incurred prior to the settlement, the *in globo* amount claimed (*i.e.*, $435.00) is not properly the subject of reimbursement pursuant to the terms of the settlement agreement. This Court will not engage in speculation as to what portion of the $435.00 in charges refers to the pertinent time frame.

### V. Conclusion

In summary, the undersigned finds by a preponderance of the evidence that plaintiff and or plaintiff's counsel are entitled to reimbursement in the following amounts:

Jeffrey Stern          $10, 264.00

---

for in the receipts forwarded to defense counsel on September 21, 2007 and are included in the prescription receipt total of $1,045.66.

[16]*See* Letter from Joyce Cargill dated October 15, 2007 [Defendant's Exhibit "K"].

[17]Defendant's Memorandum in Support of Judgment at p. 7 [Doc. #133].

[18]*See* Plaintiff's counsel's letter dated October 23, 2007 including a letter from Health First claiming a total $435.00 in charges spanning a four month time period not otherwise specified) [Defendant's Exhibit "F"].

[19]*See* Defense counsel's letter dated November 6, 2007 (seeking a more specific and detailed accounting from Health First, inter alia) [Defendant's Exhibit "G"].

Jacobs & Sarrat          $ 1,714.75

Jose Norberto Valdez  $ 7,625.71

**TOTAL**                    **$19,604.46**

 Accordingly and for all of the above and foregoing reasons,

 **IT IS RECOMMENDED** that defendant's Motion #133 be GRANTED in the total amount of **$19,604.46** all as more specifically set forth above, representing the total amount due as reimbursement of payments made by the plaintiff and plaintiff's counsel for medical treatment/cure pursuant to the terms of the settlement agreement.

**Objections**

 Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objection to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United States Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

 New Orleans, Louisiana, this 12th day of February, 2008.

_____
DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE